W. H. TRAFFORD, Administrator, *v.* H. T. WILKINSON and others.

## April Term, 1878.

LIMITATION OF ACTIONS — LAPSE OF TIME AS AFFECTING AN IMPLICATION OF TRUST. — An express trust on specific funds in the hands of an administrator will not be raised by conjecture and suspicion in favor of the personal representatives of parties, after the lapse of over sixteen years from the death of such parties, and over a quarter of a century from the accrual of the original cause of action, the right of action, independent of any trust, having been barred in seven years.

*Gannaway*, for complainant.
*Dickinson*, for Wilkinson.
*Gaut*, for Manlove.

THE CHANCELLOR : — The original bill, filed on September 3, 1877, makes this case. In February, 1845, Jesse Parker died testate, directing by his will all his estate of every description, both real and personal, to be sold and converted into money, the proceeds to be divided equally between seven persons named, one of them being his sister Elizabeth Lile. Charles L. Parker was appointed executor, and qualified as such. On April 1, 1847, he made a settlement of his administration, showing a balance in his hands of $10,836.65, of which the said Elizabeth Lile was entitled to one-seventh. She had intermarried, in Ray County, state of Missouri, with Malachi Lile, and died before she drew her share of her brother's estate. She left seven children, two of whom, Caroline Moore and Polly Cox, have died, leaving children named in the bill. The complainant has taken out letters of administration on the estates of said Caroline and Polly, and has filed this bill, as their personal representative, for their shares of the legacy to their mother. The other five children of Elizabeth Lile drew their shares of the fund about the years 1847 and 1848. Charles L. Parker died soon after his settlement,

and defendant Wilkinson became administrator *de bonis non*, with the will annexed, of the estate of Jesse Parker. On June 12, 1851, a decree was entered in this court embodying a report of said Wilkinson, as such administrator, showing that there were $600 remaining in his hands " belonging to the heirs in Missouri," being, the bill insists, the money going to Caroline Moore and Polly Cox, they being natives of the state of Missouri, and not having received their shares of the mother's legacy. This fund remained in the hands of Wilkinson until the year 1868, when, by an arrangement between Wilkinson and the defendant Charles H. Manlove, the former resigned the office of administrator *de bonis non*, and Manlove was appointed in his place, giving bond in the penalty of $1,200, with defendants Wilkinson and Cato as his sureties. The object of the bill is to hold the defendants liable for the supposed shares of the complainant's intestates in the funds retained by Wilkinson, and afterwards paid over to Manlove as aforesaid. Upon demurrer to this bill, I was of opinion that the right to sue for the original legacy, under Jesse Parker's will, to Elizabeth Lile, was in her personal representative, and not in her children and their representatives ; and that the result would not be changed by the fact that, by lapse of time, since the death of Elizabeth Lile, no administration could be taken out on her estate. But I was also of opinion that, upon the facts as stated in the bill, it seemed probable, and might appear upon discovery by answer and proof, that the defendants Wilkinson and Manlove had recognized the fund as a trust fund " belonging to the heirs in Missouri," and had thereby, and by their conduct, made themselves express trustees so as to prevent the operation of the Statute of Limitations. And I was, therefore, unwilling to allow the case to go off on demurrer, and overruled it in order to allow the facts to be fully brought out. Afterwards, an amended bill was filed, in which it was conceded that the defendant Wilkinson was not the administrator *de bonis non* of Jesse

Parker, but the personal representative of Charles L. Parker. Answers have been put in, and proof taken, and the cause is now before me for final hearing on the merits.

The record, as it now stands, discloses a state of facts materially different from that set out in the original bill. Elizabeth Lile, it seems, died within a month after the death of her brother, Jesse Parker, leaving seven children, two of them being Caroline Moore and Polly Cox, the intestates of complainant. Henry W. Lile, one of these children, for himself, and as attorney in fact for the other children, came from Missouri to Tennessee in 1847, and received from Charles L. Parker, as executor of Jesse Parker, the shares of five of these children in the legacy to their mother, — the share of each being $225, — the shares of the other two children not having been paid because of some defects in the powers of attorney. On December 17, 1847, Charles L. Parker died testate, leaving a widow and one child, an infant. The widow dissented from the will, and, on September 12, 1848, intermarried with the defendant Manlove. The child died in the year 1852, intestate, and, on June 4, 1856, the defendant Manlove qualified as administrator of his estate. In the meantime, and in 1848, the widow of Charles L. Parker filed her bill in this court, against Wilkinson and her son, for the administration of her late husband's estate, and such proceedings were had that a final decree seems to have been rendered on June 12, 1851, embodying a report of the clerk and master, showing a balance of assets in the hands of Wilkinson, and the interest of the widow and child therein. This report shows that the administrator reported " a debt against the estate, due to some heirs in Missouri, of about $600," which was deducted from the balance found and distributed. This fund remained in his hands until about April 8, 1868, when he resigned the administration, and the defendant Manlove was appointed and qualified as administrator *de bonis non* of the estate of Charles L. Parker, whereupon Wilkinson paid over to him the funds thus retained.

In April, 1850, Wilkinson wrote to Henry W. Lile, and the letter was received by him, advising him of Charles L. Parker's death, and his qualification as administrator, and notifying him that the " limits of the law would run out " against the Lile children unless they applied in time. Lile wrote, in reply, that he would come to Tennessee in September of that year, or sooner, if necessary. But from that day until shortly before the filing of the original bill nothing more was heard of or from these claimants. Caroline Moore and Polly Cox were of age at their mother's death, in 1845, and probably, though the fact is to be inferred rather than proved, married, and remained so until their respective deaths, about the commencement of the Civil War. The will of Charles L. Parker is not produced, nor are its contents anywhere disclosed. The presumption from this fact would seem to be that its provisions were not material to the rights of the complainant or his intestates. It is clear, moreover, that nothing ever passed between Wilkinson and complainant's intestates, either directly, or through Henry W. Lile as their agent, which can affect the legal rights of the intestates. The complainant must recover, if he recover at all, upon those rights, and the acts of the defendants themselves.

The right to the legacy under Jesse Parker's will vested in Elizabeth Lile ; and, upon her death, her personal representative alone had any right of action, so far as appears. But, for some reason, not apparent in any thing in this record, Charles L. Parker, as executor of Jesse Parker, chose to pay the funds realized directly to her children. Having paid five of them their shares, he evidenced his willingness to pay the other two, not only by his acts, but by letter to Henry W. Lile, the attorney in fact. It appears from Wilkinson's deposition, that Charles L. Parker, in his lifetime, spoke to him in relation to the two unpaid shares, and furnished him with the address of the agent, to whom he afterwards wrote. If, now, under these circumstances, Wilkinson had been, as alleged in the original bill, the ad-

ministrator *de bonis non* of Jesse Parker, the fund might have come to his hands impressed with a trust created by the acts and directions of Charles L. Parker as executor, which no one except an heir or devisee of Jesse Parker could call in question. In this view, his retention of the fund for twenty years as "belonging to the heirs in Missouri" would have perfected this trust in favor of these heirs, so that he could not have divested himself of it except by proceedings to which they were parties. It was for this reason that I overruled the demurrer.

It now appears, however, and is admitted by the amended bill, that Wilkinson was administrator of Charles L. Parker, and not of Jesse Parker, and that the funds which came to his hands were the funds of the estate of Charles L. Parker, so returned in his inventory, and so found by the decree of this court settling his administration. The $600 retained were to meet "a debt against the estate, due to some heirs in Missouri." There can be no doubt that the complainant's intestates were these heirs, and that the money was due to them. And there can be just as little doubt that the money would have been paid to them if they had come forward with their claims within the time allowed by law. The administrator and the widow both recognized the justice of the claims, and the former took upon himself to advise the agent of the parties that there was danger of loss by reason of the Statute of Limitations. Thus far, there is not the slightest imputation upon the good faith of any of these defendants; while, on the contrary, there was the grossest laches on the part of those beneficially entitled. And, if there were nothing else in the case, no one could blame the defendants if, after the lapse of twenty years, or even the much shorter period of seven years, they adopted any mode of disposing of the funds so that other parties, having the ulterior right to them, might derive a benefit from them.

The defendant Wilkinson having received the fund in controversy as administrator of Charles L. Parker, the right

of action of the complainant's intestates, even if they had a right of action against Charles L. Parker as an express trustee, would, as against the personal representative, be subject to the bar of the statutes of limitation passed for the protection of the estates of decedents. This has long been the settled law of the state. *Hooper* v. *Bryant*, 3 Yerg. 1. And even if the intestates were, at the time of the qualification of the defendant Wilkinson as administrator, under the disabilities of coverture, their rights of action would have been barred in seven years. Code, secs. 2281, 2786. And if the statute barred their demands, neither they, nor the complainant as their representative, can avoid the bar, merely because the distributees or devisees of Charles L. Parker permitted the fund to remain in the hands of the administrator for a much longer period.

The learned counsel of the complainant, in his argument, which has the decided merit of being clear and going directly to the point of difficulty, concedes these general principles. "The amended bill," he says, "puts the right to recover upon the ground that Wilkinson is trustee for complainant's intestates, not as legatees but as individuals." His position is, that a "specific fund" in the hands of Charles L. Parker, fixed with a trust in favor of the complainant's intestates, was turned over to and received by Wilkinson, and that this suit falls within the exception, and not the rule, of *Hooper* v. *Bryant*. He admits that there is no direct testimony establishing the trust, but urges that this can hardly be expected, as he has "to go to the ranks of the enemy for proof." He argues that the trust is sufficiently made out by the letter of Charles L. Parker to Lile, by the evidence of Wilkinson that Charles L. Parker fully informed him of the facts in relation to the funds, and the disposition which he directed to be made of them, and, most of all, by the subsequent conduct of the defendants touching the funds. The letter of Charles L. Parker to Lile, written shortly before his death, recognizes the rights

of the intestates to a portion of their mother's legacy in his hands, but asks Lile to let him know "who will come on, and when, that I may be ready without any trouble." There is a clear admission of liability, beyond doubt, and the expression of a desire to pay, but no evidence of any specific fund set apart for the purpose. On the contrary, he desires notice in time, so that he may be ready to pay. Nor is there any substantial ground for supposing that a " specific fund," ear-marked as such, ever came to the hands of Wilkinson for the intestates as individuals ; and Wilkinson's inventory, and the proceedings of this court in the bill filed for the settlement of the estate, demonstrate that no such fund was ever recognized by him as having thus come to his hands. It may safely be said that if Wilkinson had, at the expiration of seven years, paid over the money left in his hands at the settlement to the distributees of the estate, there would have been no pretence for filing the bill at this late day. It is the fact that the parties themselves, after the lapse of twenty years, still treated the fund as held for some purpose other than mere distribution, which gives the complainant even a plausible *locus standi*. This conduct is not explained by any thing in this record, nor does it appear why Wilkinson, as he says in one place, should have thought that the fund belonged to a brother of Jesse Parker. I agree that this conduct, unexplained, is suspicious, and opens a door to conjecture. But I am unwilling to build upon mere suspicion an express trust, contradicted by every other fact in the record, in favor of parties who have slept for over a quarter of a century on their rights.

The bill must be dismissed ; but, under the circumstances, the defendant Manlove will pay the costs.